Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | Michael T. Mason |
|---|---|---|---|
| **CASE NUMBER** | 01 C 7111 | **DATE** | 7/8/2002 |
| **CASE TITLE** | Smith vs. City of Plano et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum Opinion and Order, defendants' motion to quash subpoena [10-1] is denied. Status hearing set for 10/10/02 at 9:00 a.m. Parties are to contact the courtroom deputy, 312/435-6051, if there is interest in scheduling a settlement conference. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JUL - 9 2002 | |
| | Notified counsel by telephone. | | date docketed | 15 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 7/8/2002 | |
| KF | courtroom deputy's initials | 02 JUL -8 AM 11:52 | date mailed notice KF | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| AARON D. SMITH ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 01 C 7111 |
| v. ) | |
| ) | Judge Gettleman |
| CITY OF PLANO, STEVEN S. EAVES, ) | |
| HARRY HAGGARD ) | Mag. Judge Mason |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Michael T. Mason, United States Magistrate Judge:

The defendants, City of Plano, Steven S. Eaves, and Harry Haggard, have brought a motion to quash plaintiff Aaron Smith's subpoena to obtain the records of Eric Ostrov, M.D., a psychiatrist who performed a psychological examination of defendant Haggard. Haggard was employed by the City of Plano Police Department as a lieutenant at the time the facts alleged in the complaint occurred. He was ordered to submit to a "fitness for duty" examination by Dr. Ostrov after the City of Plano received complaints from police officers, including the plaintiff, that Haggard was mistreating them. Plaintiff is suing the defendants for racial harassment and discrimination and seeks Dr. Ostrov's records as part of his discovery.

The defendants brought a motion to quash the subpoena, arguing that the records are privileged under the patient-doctor privilege, and that Haggard never voluntarily waived the privilege, but was compelled to waive under threat of

discipline.[1] For the reasons set forth below, the motion to quash the subpoena is DENIED.

In *Jaffee v. Redmond*, the Supreme Court established a privilege for communications between mental health therapists and their patients because the relationship between the two is "rooted in the imperative need for confidence and trust." 518 U.S. 1, 10-15 (1996). 518 U.S. 1, 15 (1996). While this privilege extends to fitness for duty examinations such as the one here, it is limited to circumstances where the recommendations of the doctors are communicated to the patient's employer in general terms, not including "any specific diagnosis or clinical observations." *Caver v. City of Trenton*, 192 F.R.D. 154, 157 (D.N.J. 2000).[2]

If it is known that privileged information will be given to those other than the doctor and the patient, the privilege will not survive. *In Re Pebsworth*, 705 F.2d 261, 263 (7th Cir. 1983); *Scott v. Edinburg*, 101 F.Supp.2d 1017, 1021 (N.D. Ill. 2000)(an expectation that the information told to the doctor will remain only with the doctor is mandatory for a privilege to exist). Also, the fact that an

---

[1] By analogizing to the Fifth Amendment, defendant also argues that any waiver should be limited to the purpose for which it was given, in this case, for report to the disciplinary board within the police department. However, limited waivers are used only in specific circumstances – primarily in the attorney-client context – that are not present in this case. *See Westinghouse Electric Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1425 (3rd Cir. 1991)(selective waiver used to promote cooperation with government investigations). Further, the existence of the limited waiver is generally disfavored. *Dellwood Farms, Inc. v. Cargill Inc.*, 128 F.3d 1122, 1126 (7th Cir. 1997). The Defendants also claim that the information is protected as being a "self-critical analysis," but this argument fails because the defendants are unable to prove the required elements, most notably that the individual seeking to assert the privilege, Haggard, is not the entity who chose to undertake a self critical analysis in order to discover potential liabilities within the police department prior to a formal investigation. *Morgan v. Union Pacific R.R. Co.*, 182 F.R.D. 261, 266 (N.D. Ill. 1998).

[2] In most such situations, the therapist merely provides the patient's employer with a single word diagnosis of "pass" or "fail". The therapist's underlying notes and conclusions remain privileged.

individual was directed to undergo a fitness for duty evaluation or face disciplinary action does not destroy the voluntariness of any waiver of the privilege. *See Caver*, 192 F.R.D. at 162.

The letter directing Haggard to attend the fitness for duty examination stated that both the doctor's conclusions **and** reasons for those conclusions would be given to the Chief of Police. Further, the letter clearly stated that "[a]t no time and in no way shall there be any type of Doctor-Patient privilege between you and Doctor Ostrov." Haggard argues that only he can waive the privilege, and that he appeared at the evaluation under duress, nullifying the waiver. However, such scenarios are common in cases concerning police officers ordered to undergo fitness for duty evaluations, and we have seen no cases where the threat of discipline affected the voluntary nature of the waiver. In *Scott*, 101 F.Supp. 2d at 1020, for example, the police officer undergoing a fitness for duty examination specifically refrained from making certain comments because he knew that the evaluation may be shown to others.

Haggard argues that he did not waive the privilege because he believed the information would only be shown to the Chief of Police. However, it is the very fact that he knew the information would be shown to the Chief that breaks the privilege. Indeed, by informing Haggard that no privilege attached to his conversation with Dr. Ostrov, the Chief faced the possibility that Haggard might not be completely forthright with the psychiatrist, such as was the situation in *Scott*. Haggard knew that he was being sent to the examiner to determine if he was fit to continue working as a police officer and that he should expect no

privacy in the information he related to Dr. Ostrov. This alters the nature of Haggard's relationship with the doctor. Haggard "failed to establish the expectation of confidentiality that is the prerequisite for the existence of the [doctor]-patient privilege." *Scott*, 101 F.Supp 2d at 1021.

Our conclusion does not mean that the information from Dr. Ostrov's examination may be disclosed to anyone connected with the case, however. The parties should work together to draft a confidentiality agreement that will allow the information to be shown to attorneys and their support staff, experts, and relevant representatives of defendants only. If there are additional categories of individuals that plaintiff believes should have access to the information, they may address their requests to the Court. Plaintiff should not be given access to the information without prior agreement of the parties. Further, plaintiff's attorney may depose Dr. Ostrov and question defendants and any other witnesses about their communications with Dr. Ostrov, but such deposition transcripts should be subject to the protective order as well.

For the foregoing reasons, defendants' motion to quash is DENIED.

ENTER:

*[signature]*

MICHAEL T. MASON
United States Magistrate Judge

Dated: July 8, 2002